UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

MEMPHIS DIVISION

| | |
|---|---|
| G-FORCE POWERSPORTS INC., Individually and on Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>   vs.<br><br>FEDERAL EXPRESS CORPORATION, a Delaware corporation, and FEDEX LOGISTICS, INC., a New York corporation,<br><br>                  Defendants. | Civil Action No. _____<br><br>Judge: _____<br><br>CLASS ACTION COMPLAINT<br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

Plaintiff G-Force Powersports Inc. ("Plaintiff"), individually and on behalf of all those similarly situated ("Class" or "Class Members"), brings this Class Action Complaint ("Complaint") against Defendants Federal Express Corporation ("Federal Express") and FedEx Logistics, Inc. ("FedEx Logistics") (collectively, "FedEx" or "Defendants") and alleges upon personal knowledge as to its own actions and investigation of counsel, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1.      This class action lawsuit arises from FedEx's practice of improperly levying import duties and collecting brokerage, advancement, and other fees on duty-free ("Duty-Free") products.

2.      Duty rates for goods for most countries are listed in Column 1, General sub column of the Harmonized Tariff Schedule of the United States ("HTS").[1] Countries whose goods qualify for these rates are countries with which the United States maintains "Normal Trade Relations."[2]

3.      Duty-Free products are classified under the HTS subheadings carrying a designation of Column 1-General duty rate "Free."

4.      Frequently imported consumer goods including apparel, accessories like sunglasses, watches, and handbags, books, electronics, food and beverages, cosmetics and skin care, and perfume and fragrances, all fall within the Duty-Free category.[3]

5.      In February 2025, President Trump and his administration began imposing tariffs under the International Emergency Economic Powers Act ("IEEPA").[4]

6.      On February 20, 2026, the Supreme Court struck down all of the Trump administration's tariffs, holding in *Learning Resources, Inc. v. Trump*, __ U.S. __, 146 S. Ct. 628, 646 (2026), that "IEEPA does not authorize the President to impose tariffs."

7.      Thus, during the relevant time period, Duty-Free products were assessed IEEPA tariffs that the Supreme Court has now held were never lawfully authorized.

---

[1]   U.S. Customs and Border Protection, *Column 1/Column 2/MFN/NTR - Countries that does [sic] business with the United States*, https://www.help.cbp.gov/s/article/Article-1117?language= en_US (last accessed Mar. 3, 2026).

[2]   *Id.*

[3]   Digit, *List of the Most Popular Duty-Free Items*, https://www.godigit.com/international-travel-insurance/duty-free-shopping (last accessed Mar. 3, 2025).

[4]   *See* 35 U.S.C. §1701, *et seq.*; *see also infra* notes 9-12.

8.     As a customs broker that often serves as importer of record for business and consumer shipments under its default broker-inclusive service,[5, 6] FedEx paid IEEPA duties to United States Customs and Border Protection ("CBP") on behalf of Plaintiff and Class Members, and then invoiced those businesses and consumers directly for duties and taxes to recuperate the amounts FedEx had paid.[7] FedEx also charged brokerage and clearance service fees to Plaintiff and Class Members[8] for processing customs entries that they would not have been required to pay for Duty-Free products but for the void IEEPA tariffs.

9.     On February 23, 2026, three days after the Supreme Court's decision in *Learning Resources*, FedEx filed a lawsuit in the United States Court of International Trade ("CIT") seeking a "full refund" of all IEEPA duties it paid to the United States. *See* Complaint, ¶5, *Fed. Express Corp. v. U.S. Customs & Border Prot.*, No. 26-cv-01150 (Ct. Int'l Trade Feb. 23, 2026), ECF 2. FedEx's complaint seeks recovery of the very funds that Plaintiff and Class Members paid to FedEx, asserting that FedEx "seek[s] ***for themselves*** a full refund from Defendants of all IEEPA duties [FedEx] paid to the United States." *Id.* FedEx's CIT complaint seeks only the refund of duties (plus interest) and does not address the brokerage, advancement, and other fees FedEx collected from Plaintiff and Class Members, which FedEx will retain even if its duty refund claim is granted. *Id.*, ¶55.

10.     This action presents an actual, concrete controversy that is ripe for adjudication. FedEx collected from businesses and consumers like Plaintiff and Class Members both unlawful IEEPA duties and brokerage, advancement, and other fees that were necessitated by tariffs which were never lawfully authorized. This entire customs entry was unnecessary as the Duty-Free products would have entered Duty-Free without any formal or informal entry filing.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction under 28 U.S.C. §1332(d)(2)(A) because at least one member of the Class is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12.     This Court has jurisdiction to enter declaratory relief under 28 U.S.C. §2201 because an actual controversy exists between the parties regarding FedEx's obligation to refund the IEEPA duties and brokerage and clearance service fees FedEx collected, as well as any IEEPA duty FedEx recovers from the United States, to the businesses and consumers who paid them.

13.     This Court has personal jurisdiction over Federal Express because its principal place of business is in Memphis, Tennessee; it conducts continuous and systematic business in the state of Tennessee; it ships goods to and from Tennessee on a daily basis; it maintains operational facilities and employees in Tennessee; and it collected the unlawful IEEPA duties and brokerage, advancement, and other fees from Plaintiff and Class Members within this District.

---

[5]     Tony Romm, *FedEx Says It Could Return Any Money From Tariff Refunds to Customers*, N.Y. Times (Feb. 26, 2026), https://www.nytimes.com/2026/02/26/business/fedex-trump-tariff-refunds-customers.html.

[6]     FedEx, *FedEx International Broker Select*, https://www.fedex.com/en-us/shipping/international/brokerage.html#own-broker (last accessed Mar. 3, 2026).

[7]     FedEx, *Who pays duties and taxes?*, https://www.fedex.com/en-il/customer-support/faq/duties-taxes-imported-goods/paying-duties-taxes/who-pays-custom-duties-taxes.html (last accessed Mar. 3, 2026).

[8]     FedEx, *Clearance services and related fees assessed on international shipments*, https://www.fedex.com/en-ar/ancillary-clearance-service.html (last accessed Mar. 3, 2026).

14.     This Court has personal jurisdiction over FedEx Logistics because its principal place of business is in Memphis, Tennessee and, upon information and belief, it conducts business in Tennessee, including customs brokerage services, and because it acts in concert with Federal Express in the collection and remuneration of IEEPA duties and brokerage and clearance service fees at issue in this action.

15.     Venue is proper in this District under 28 U.S.C. §1391 because Defendants: (a) are authorized to conduct business in this District; (b) have intentionally availed themselves of the laws and the markets in this District; (c) conduct substantial business in this District; and (d) are subject to personal jurisdiction in this District.  Venue is proper in this Division under Local Rule 3.3(b)(2) as one or more defendants have their principal place of business within this Division.

## PARTIES

16.     Plaintiff G-Force Powersports Inc. is a South Carolina corporation with its principal place of business located at 712 Old Rutherford Road, Taylors, South Carolina 29687.

17.     Defendant Federal Express Corporation is a Delaware corporation with its principal place of business in Memphis, Tennessee. Federal Express is a wholly-owned subsidiary of FedEx Corporation, a Delaware holding company, and operates FedEx's express transportation and international shipping services. Federal Express conducts substantial business throughout the state of Tennessee, including in the Western District of Tennessee, and maintains a registered agent and offices in Tennessee. When goods are shipped internationally into the United States through FedEx's shipping services, Federal Express transports the goods and, through its affiliate FedEx Logistics, provides customs brokerage services and serves as the importer of record for business and consumer shipments processed as informal entries.

18.    Defendant FedEx Logistics, Inc. is a New York corporation with its principal place of business in Memphis, Tennessee. FedEx Logistics is a wholly-owned subsidiary of FedEx Corporation and an affiliate of Federal Express, operating under common ownership and control. FedEx Logistics is a licensed customs broker that serves as the importer of record and filer of entry for business and consumer shipments transported through FedEx's international shipping services, including Plaintiff's shipment at issue in this action. FedEx Logistics is also named as a co-plaintiff in the pending CIT action seeking refund of IEEPA duties, *Fed. Express Corp. v. U.S. Customs & Border Prot.*, No. 26-cv-01150 (Ct. Int'l Trade). Upon information and belief, FedEx Logistics advanced the IEEPA duties, then collected the advance from businesses and consumers and now seeks recovery of the IEEPA duties that were subsidized by businesses and consumers, including Plaintiff and the Class Members.

## FACTUAL ALLEGATIONS

### A.    The Rise and Fall of IEEPA Tariffs

19.    In February 2025, President Donald J. Trump issued a series of executive orders invoking IEEPA to impose new tariffs on goods imported from numerous foreign countries. These included 25% tariffs on Canadian[9] and Mexican[10] imports and escalating tariffs as high as 145% on Chinese imports.[11]

---

[9]    Exec. Order 14193, 90 Fed. Reg. 9113 (Feb. 1, 2025).

[10]    Exec. Order 14194, 90 Fed. Reg. 9117 (Feb. 1, 2025).

[11]    Exec. Order 14195, 90 Fed. Reg. 9121 (Feb 1, 2025); Exec. Order 14228, 90 Fed. Reg. 11463 (Mar. 3, 2025); Exec. Order 14259, 90 Fed. Reg. 15509 (Apr. 8, 2025); Exec. Order 14266, 90 Fed. Reg. 15625, Apr. 9, 2025).

20.     On April 2, 2025, the President issued an executive order invoking IEEPA to impose a 10% tariff on nearly all other imports under the "reciprocal tariff" order, with rates ranging from 11% to 50% on certain countries.[12]

21.     On February 20, 2026, in a 6-3 decision, the Supreme Court invalidated all IEEPA-based tariffs, holding "that IEEPA does not authorize the President to impose tariffs." *Learning Res., Inc*, 146 S. Ct. at 646.

22.     On February 22, 2026, CBP announced that effective February 24, 2026, IEEPA duty collection would cease.[13]

**B.     Suspension of the *De Minimis* Exemption**

23.     Under 19 U.S.C. §1321(a)(2)(C), goods imported into the United States with an aggregate fair retail value of $800 or less were exempt from duties and taxes under the so-called "*de minimis*" exemption.

24.     On April 2, 2025, the President's Executive Order 14256[14] eliminated the *de minimis* exemption for goods originating from China and Hong Kong, effective May 2, 2025. Beginning on that date, all imports from China and Hong Kong, regardless of value, became subject to applicable duties, taxes, and fees—including IEEPA tariffs.

---

[12]  Exec. Order 14257, 90 Fed. Reg. 15041 (April 2, 2025).

[13]  *See* U.S. Customs & Border Protection, CSMS # 67834313 - Ending Collection of International Emergency Economic Powers Act Duties.

[14]  Exec. Order 14256, 90 Fed. Reg. 14899 (Apr. 2, 2025).

25.    On July 30, 2025, the President's Executive Order 14324[15] suspended *de minimis* treatment for goods originating from all countries, effective August 29, 2025. Beginning on that date, all imported goods, regardless of value, country of origin, or method of transport, became subject to applicable duties, taxes, and fees.

26.    Businesses and consumers who had previously imported goods with an aggregate retail value of $800 or less Duty-Free were now susceptible to new customs charges due to the suspension of the *de minimis* exemption, coupled with the imposition of IEEPA tariffs. FedEx responded to this regulatory change by creating new fee structures and clearance processes to address the vastly increased quantity of dutiable shipments.

27.    Presumably, for products classified under HTS subheadings with a Column 1-General duty rate of "Free," the suspension of the *de minimis* exemption in effect had no bearing on the duty calculation. Because the applicable Column 1-General rate was already "Free," the suspension of the exemption did not create any lawful duty liability. For Duty-Free products, the IEEPA tariff was the sole source of any duty assessment regardless of shipment value or whether the *de minimis* exemption applied.

28.    The *de minimis* exemption suspension expanded the number of shipments requiring customs entries, and for Duty-Free products, the IEEPA tariff was the cause of duty assessment and associated fees.

---

[15]   Exec. Order 14324, 90 Fed. Reg. 37775 (July 20, 2025).

### C.    Duty-Free Products

29.    Every product classification is assigned a Column 1-General duty rate by the HTS. For Duty-Free products, which are classified under HTS subheadings with a Column 1-General rate of "Free," no duty would have been assessed under any lawful tariff authority, irrespective of shipment value or whether the de minimis exemption applied. The IEEPA tariffs were the singular source of any duty liability on these products.

30.    For every shipment of a Duty-Free product during the IEEPA period, the causal chain is direct and unsevered: (a) the IEEPA executive orders imposed the sole duty on the product; (b) the duty triggered the requirement for a customs entry filing; (c) the customs entry triggered FedEx's assessment of brokerage and clearance service fees; and (d) the Supreme Court declared the IEEPA tariffs void *ab initio*. But for the void IEEPA tariffs, there would have been no duty, no customs entry, and no brokerage, advancement, and other fees.

31.    For the Duty-Free classification, 100% of the duties collected on such products, and 100%  of the brokerage, advancement, and other fees charged to process those duties, can be attributed to the recently voided IEEPA tariffs.

### D.    FedEx's Role as Customs Broker and Importer of Record

32.    Through its default broker-inclusive service, FedEx Logistics acts as the customs broker and the importer of record when goods are shipped internationally into the United States via FedEx. For U.S.-based business and consumer shipments, FedEx Logistics processes the entries as informal entries through CBP's Automated Broker Interface and serves as the importer of record. The individual business or consumer who purchased the goods neither appears on the CBP entry as the importer of record nor has a direct relationship with CBP concerning the duty obligation.

33.     In its capacity as customs broker and importer of record, FedEx issues payments in advance for duties, taxes, and fees to CBP on behalf of the business or consumer who is receiver of the imported goods. FedEx then invoices and collects the sums from the business and consumer for these charges.[16] Therefore, it is the individual business or consumer, not FedEx, who shoulders the financial burden of the tariff. FedEx merely serves as a conduit that pays the duty to CBP and then collects reimbursement from the business or consumer.

### E.     FedEx's Brokerage, Clearance, and Other Fees

34.     Additionally, FedEx levied fees in connection with customs entry processing, including a Merchandise Processing Fee and, in certain cases, a Disbursement Fee or Duty Handling Fee.[17] For Duty-Free products, these fees were charged to process customs entries that, but for the void IEEPA tariffs, would not have existed.

35.     For Duty-Free products, the brokerage, advancement, and other fees represent charges for services that were necessitated solely by the void IEEPA tariffs. The customs entry itself was unnecessary as the products would have entered Duty-Free without any formal or informal entry filing. Therefore, FedEx's fees for those entries are independently recoverable as damages flowing from the void tariff scheme. Even if FedEx refunds the void duties, the brokerage, advancement, and other fees are still charges for which there was no lawful basis.

---

[16]   *Who pays duties and taxes?*, *supra* note 7.

[17]   FedEx, *Service Guide* (Feb. 2, 2026), https://www.fedex.com/content/dam/fedex/us-united-states/services/Service_Guide_2026.pdf.

**F.      FedEx's Complaint in the United States Court of International Trade**

36.      On February 23, 2026, FedEx filed a complaint in the CIT seeking "for themselves a full refund from Defendants of all IEEPA duties" paid by importers. Complaint, ¶5, *Fed. Express Corp. v. U.S. Customs & Border Prot.*, No. 26-01150 (Ct. Int'l Trade Feb. 23, 2026), ECF 2.

37.      FedEx's complaint establishes standing based on its status as "the importers of goods imported into the United States" who "have paid IEEPA duties to the United States and thus have suffered injury caused by those orders." *Id.*, ¶14.

38.      FedEx's complaint does not address whether FedEx intends to return to its customers any refund it receives from the government. In fact, the complaint contains no acknowledgment that it advances duties and fees up front and seeks reimbursement from the individual businesses and consumers, no commitment to establish a refund procedure for businesses and consumers, and no acknowledgement that the "injury" FedEx claims to have suffered was in fact shouldered by millions of individual businesses and consumers.

39.      While FedEx has stated on its website that it intends to issue IEEPA refunds to shippers, businesses, and consumers if refunds are obtained, this voluntary representation is not expressed in FedEx's CIT complaint, creates no legally enforceable obligation, and is explicitly conditioned on future government and court guidance that may never ensue.

40.      Further, FedEx's CIT complaint seeks only the refund of duties. It does not address the brokerage, advancement, and other fees FedEx collected to process customs entries required by the now-void IEEPA tariffs. Even if FedEx recovers a full duty refund from the government, FedEx will retain the brokerage, advancement, and other fees collected from business or consumers, which are fees for processing entries that should never have been filed on Duty-Free products. This creates a separate and independent basis for unjust enrichment.

41.     The government has acknowledged FedEx's refund obligation. In seeking a stay of the CIT's judgment in a related tariff case, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812 (Fed. Cir.), the government represented that if tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government would issue refunds to plaintiffs, including any interest that accrues. The Supreme Court has now held the tariffs unlawful, making FedEx's recovery of a refund from CFB not hypothetical but highly probable.

42.     Because FedEx is the importer of record, only FedEx has standing to seek a refund of duties from CBP through the CIT. Individual businesses and consumers, including Plaintiff and Class Members, have no direct avenue to recover from the government the IEEPA duties they paid through FedEx. This structural imbalance is the fundamental inequity that this action aims to address: while FedEx holds the legal right to recover from the government, the businesses and consumers paid these sums to FedEx, and FedEx should refund to Class Members the unlawful sums charged to and collected from them, including both the void duties and the brokerage, advancement, and other fees.

43.     This creates an actual, concrete controversy between Plaintiff and FedEx that is ripe for adjudication.

### PLAINTIFF'S SPECIFIC ALLEGATIONS

44.     Between February 4, 2025, and February 24, 2026 (the "Class Period"), Plaintiff placed orders for multiple products from foreign manufacturers, including motorcycle parts from Italian manufacturers.

45.     The manufacturers used FedEx to ship the motorcycle parts to Plaintiff.

46.     The motorcycle parts from Italy were subject to a 15% tariff, which FedEx paid as the importer of record. These tariffs represented IEEPA duties assessed on the goods, which were imported from Italy.

47.     For instance, in or about January 2026, Plaintiff received an invoice from FedEx for the tariff on one item, including related brokerage, advancement, and other fees (labeled a Merchandise Processing Fee), totaling $661.18, which Plaintiff paid on or about January 20, 2026.

48.     Further, in or about February 18, 2026, Plaintiff received an invoice from FedEx for another tariff, including related brokerage, advancement, and other fees (labeled a Merchandise Processing Fee), totaling $2,174.04, which Plaintiff paid on or about March 17, 2026.

49.     To date, Plaintiff has not received a refund of the above-described 15% tariffs or the related fees that it paid.

50.     Plaintiff paid FedEx unlawful tariffs and processing and brokerage, advancement, and other fees for multiple other shipments during the Class Period.

51.     Absent the unlawful IEEPA tariff scheme, Plaintiff's shipments would have entered the United States entirely Duty-Free under the applicable Column 1-General rate, no customs entry would have been required, and Plaintiff would have incurred neither the duties nor the brokerage, advancement, and other fees charged by FedEx. The entirety of the sums charged to Plaintiff, including both the void duties and the fees for processing a customs entry that should never have been filed, is thus directly attributable to the IEEPA tariffs.

52.     Plaintiff's allegations are identical to those of other Class Members who, but for the unlawful IEEPA tariffs, would not have a duty nor the brokerage, advancement, and other fees charged by FedEx.

**CLASS ACTION ALLEGATIONS**

53.     Plaintiff brings this case as a class action pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on his own behalf and as Class Representative on behalf of the following:

All persons and entities in the United States who, during the period from February 4, 2025 through February 24, 2026 ("Class Period"), paid to Federal Express Corporation or FedEx Logistics, Inc. any of the following in connection with imported goods classified under Harmonized Tariff Schedule of the United States ("HTS") subheadings carrying a Column 1-General duty rate of "Free": (a) tariff charges assessed under the International Emergency Economic Powers Act ("IEEPA"), including duties imposed under Chapter 99 IEEPA subheadings; and/or (b) brokerage, advancement, and other ancillary fees charged in connection with customs entries filed to process such IEEPA tariffs (the "Class").

54.    Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this action and members of their families; (b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parent(s) have a controlling interest and its current or former employees, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) Plaintiff's counsel and Defendants' counsel; and (f) the legal representatives, successors, and assigns or any such excluded persons.

55.    This action has been brought and may be maintained as a class action under the Federal Rules of Civil Procedure.

### A.    Numerosity

56.    Federal Rule of Civil Procedure 23(a)(1). This Class likely consists of millions of individuals who imported Duty-Free goods into the United States through FedEx and were charged IEEPA duties and brokerage, advancement, and other fees by FedEx during the Class Period. Approximately 47.5% of all U.S. tariff lines carry a Column 1-General rate of zero, and FedEx handles millions of international shipments. As a result, joinder of all Class Members in a single action is impracticable. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, or website posting.

- 14 -

### B.      Existence and Predominance of Common Questions of Law and Fact

57.      <u>Federal Rules of Civil Procedure 23(a)(2) and (b)(3)</u>. There are questions of fact and law common to the Class that predominate over any questions affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include, but are not limited to:

(a)      whether the IEEPA tariffs were void *ab initio*;

(b)      whether Class Members' goods were classified under HTS subheadings with Column 1-General duty rate of "Free";

(c)      whether the customs entries filed by FedEx for such goods were necessitated solely by the void IEEPA tariffs;

(d)      whether FedEx is obligated to return the duties and brokerage, advancement, and other fees to the businesses and consumers who paid them;

(e)      whether FedEx's retention of both its customers' payments and government refunds constitutes unjust enrichment;

(f)      whether brokerage, advancement, and other fees assessed for processing entries necessitated solely by void tariffs are independently recoverable; and

(g)      the appropriate amount of restitution.

### C.      Typicality

58.      <u>Federal Rule of Civil Procedure 23(a)(3)</u>. Plaintiff's claims are typical of those of the Class because Plaintiff, like every other Class Member, paid both void duties and the brokerage, advancement, and other fees to FedEx, and has not received refunds. Further, Plaintiff's goods, like the goods of every other Class Member, carry a Column 1-General duty rate of "Free." Like every other Class Member, the entire duties and the entire brokerage, advancement, and other fees assessed against Plaintiff were attributable solely to the void IEEPA tariff scheme.

**D.      Adequacy**

59.      Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Class because it is a member of the Class and its interests do not conflict with the interests of the Class that it seeks to represent. The interests of the Class Members will be adequately protected by Plaintiff and its undersigned counsel.

**E.      Declaratory and Injunctive Relief**

60.      Federal Rule of Civil Procedure 23(b)(2). FedEx has acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole.

61.      Additionally, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants; the prosecution of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impeded their ability to protect their interests; and/or Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

62.      Plaintiff and the Class reserve the right to seek, in the alternative, certification of issues pursuant to Fed. R. Civ. P. 23(c)(4).

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

63.    Plaintiff re-alleges, and adopts by reference herein, the allegations contained in paragraphs 1 through 62, above, and further alleges as follows:

64.    Plaintiff and Class Members conferred a benefit upon FedEx by paying IEEPA duties and brokerage, advancement, and other fees that FedEx billed to them in connection with the importation of goods into the United States.

65.    FedEx had knowledge of and understood the benefit conferred upon it, as FedEx consciously billed and collected IEEPA duties and brokerage, advancement, and other fees from Plaintiff and Class Members through its import charge billing system.

66.    The Supreme Court has held that the IEEPA tariffs were not lawfully authorized. The duties were therefore void *ab initio*. Thus, there were no lawful grounds for FedEx to collect these charges from Plaintiff and the Class Members, nor is there any lawful ground for FedEx to retain those charges now.

67.    FedEx's unjust enrichment extends to the brokerage, advancement, and other fees. For Duty-Free products, the customs entries processed by FedEx were necessitated solely by the void IEEPA tariffs. No customs entry would have been required but for the unlawful tariffs. FedEx charged fees for processing entries that should never have been filed, and now seeks to retain those fees even as its CIT filing acknowledges the void status of the underlying tariffs. Accordingly, any and all sums FedEx collected in brokerage, advancement, and other fees on Duty-Free products were charges for which there was no lawful consideration.

- 17 -

68.     FedEx's collection and retention of these funds is unfair and unjust. FedEx has been unjustly enriched at the expense of Plaintiff and Class Members unless it returns both the void duties and the brokerage, advancement, and other fees to Class Members who paid them.

69.     Plaintiff has no adequate remedy at law.

70.     The full amount of the duties and fees FedEx unlawfully collected and retained from Plaintiff and Class Members is known to FedEx from its internal business records, which is the sum certain for which Plaintiff seeks restitution and disgorgement from FedEx in this case.

71.     Plaintiff and the Class, therefore, seek restitution and disgorgement of all IEEPA duties and the brokerage, advancement, and other fees they paid to Defendant on Duty-Free products, plus prejudgment interest.

**COUNT II**
**CONVERSION**
**(On Behalf of Plaintiff and the Class)**

72.     Plaintiff re-alleges, and adopts by reference herein, the allegations contained in paragraphs 1 through 62, above, and further alleges as follows.

73.     For its own use and benefit, FedEx billed and collected from Plaintiff and Class Members money in the form of IEEPA duties and the brokerage, advancement, and other fees.

74.     FedEx intentionally exercised dominion and control over the money billed and collected from Plaintiff and Class Members in the form of IEEPA duties and the brokerage, advancement, and other fees that it refused to refund.

75.     FedEx's actions are in defiance of Plaintiff's and Class Member's ownership rights.

76.     The full amount of the duties and fees FedEx unlawfully converted from Plaintiff and Class Members is known to FedEx from its internal business records, which is the sum certain for which Plaintiff seeks damages from FedEx in this case.

77.     As a direct and proximate result of FedEx's conversion, Plaintiff and Class Members have suffered damages in an amount to be determined at trial but believed to be in excess of $5,000,000.

78.     Plaintiff and Class Members are entitled to recover the full value of the IEEPA duties and brokerage, clearance, and others fees paid to FedEx, plus pre-judgment interest.

**COUNT III**
**MONEY HAD AND RECEIVED**
**(On Behalf of Plaintiff and the Class)**

79.     Plaintiff re-alleges, and adopts by reference herein, the allegations contained in paragraphs 1 through 62, above, and further alleges as follows.

80.     FedEx billed and collected from Plaintiff and Class Members money in the form of IEEPA duties and brokerage, clearance, and others fees.

81.     FedEx received this money for the purpose of reimbursing itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as lawfully assessed duties on imported goods, and for the purpose of compensating itself for customs entry processing services. The Supreme Court has now held that the IEEPA tariffs were never lawfully authorized, rendering the basis for FedEx's collection of this money void *ab initio*. For Duty-Free products, the customs entries were unnecessary and the processing services had no lawful basis.

82.     The consideration for these payments has failed *in toto*. Plaintiff and Class Members paid FedEx to satisfy a duty obligation that never lawfully existed and to compensate FedEx for customs processing that was necessitated solely by a void tariff scheme.

83.     In equity and good conscience, FedEx should not be permitted to retain these funds and is obligated to return them to Plaintiff and the Class Members.

84.     Plaintiff has no adequate remedy at law.

85.     The full amount of the duties and fees FedEx unlawfully collected and retained from Plaintiff and Class Members is known to FedEx from its internal business records, which is the sum certain for which Plaintiff seeks restitution from FedEx in this case.

86.     Plaintiff and the Class, therefore, seek restitution of all IEEPA duties and processing and other fees they paid to Defendant on Duty-Free products, plus pre-judgment interest.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(28 U.S.C. §2201)**
**(On Behalf of Plaintiff and the Class)**

87.     Plaintiff re-alleges, and adopts by reference herein, the allegations contained in paragraphs 1 through 62, above, and further alleges as follows:

88.     Under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, this Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

89.     An actual controversy has arisen regarding the rights and obligations of the parties with respect to IEEPA duties and brokerage and clearance services fees collected by FedEx from Plaintiff and the Class on Duty-Free products. This controversy is not hypothetical or abstract: the Supreme Court has declared the underlying tariffs were not lawfully authorized, FedEx has already filed suit in the CIT to recover the duty funds at issue, and FedEx has not refunded the IEEPA duties or brokerage, clearance, and other fees to Plaintiff or Class Members.

90.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

- 20 -

(a)     The IEEPA duties collected by FedEx from Plaintiff and the Class on Duty-Free products were collected pursuant to tariffs that were never lawfully authorized and that FedEx has no legal right to retain.

(b)     For Duty-Free products, the customs entries filed by FedEx were necessitated solely by the void IEEPA tariffs, and the brokerage, clearance, and other fees FedEx charged to process those entries are recoverable as charges for which there was no lawful basis.

(c)     FedEx is obligated to return to Plaintiff and Class Members all IEEPA duties and brokerage, clearance, and other fees collected from them on Duty-Free products, together with interest.

(d)     FedEx is obligated to provide a full accounting of all IEEPA duties and brokerage, clearance, and other fees it collected from the Class during the Class Period.

91.     Declaratory relief is necessary and appropriate because FedEx collected duties and fees pursuant to tariffs that the Supreme Court has declared were never lawfully authorized, FedEx has not returned those sums to the businesses and consumers who paid them, and FedEx has separately filed suit to recover from the government the very funds that businesses and consumers provided to FedEx. Without judicial intervention, Plaintiff and the Class have no assurance that FedEx will return the unlawfully collected sums.

92.     Class Members have no alternative remedy. Because FedEx served as the importer of record, only FedEx has standing to seek a refund from CBP. Individual businesses and consumers cannot file suit in the CIT to recover duties they paid through FedEx, and there is no administrative procedure for businesses and consumers to recoup brokerage, clearance, and other fees from FedEx. Without the declaratory relief sought in this action, Class Members will be left without any mechanism to recover the unlawful tariffs and fees they were forced to pay.

- 21 -

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully requests that this Court enter judgment in its favor against the Defendants as follows:

A.    For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representatives and Plaintiff's attorneys as Class Counsel;

B.    For an Order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.    For restitution and disgorgement of all sums wrongfully obtained by Defendants;

D.    For damages for unlawful conversion in an amount to be determined at trial;

E.    For pre- and post-judgment interest on all amounts awarded;

F.    For declaratory relief as requested herein or at this Court may deem proper;

G.    For an Order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, costs of suit, and any other expense;

H.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Class Members demand a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable.

DATED:  April 6, 2026             BARRETT JOHNSTON MARTIN
                                   & GARRISON, PLLC
                                   JERRY E. MARTIN (TNBPR # 020193)
                                   SETH M. HYATT (TNBPR # 031171)


                                   _____
                                        *s/Jerry E. Martin*
                                        Jerry E. Martin

- 22 -

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON*
MARK J. DEARMAN*
MICHAL-ANE E. MCINTOSH*
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
mmcintosh@rgrdlaw.com

WITES & ROGERS, P.A.
MARC A. WITES*
THOMAS B. ROGERS*
4400 North Federal Highway
Lighthouse Point, FL  33064
Telephone:  954/933-4400
mwites@witeslaw.com
trogers@witeslaw.com

Attorneys for Plaintiff and the Class

* *Pro hac vice* forthcoming